Good morning, Your Honors, and may it please the Court, Brandi Robinson of the Federal Defender Office in the Eastern District of Michigan in Detroit for the appellant, Rahsaan Black, and I will reserve two minutes for rebuttal, please. Appellant is a 36-year-old male who is serving a 25-year sentence for three separate convictions for felon in possession. Mr. Black had a well documented history spanning nearly 10 years of mental health problems, so which the jury should assess the commission of the felon in possession offense, and we've laid out the facts quite extensively in the briefing. The principal focus of this appeal, then, is the jury's ability, or really their inability, to fully evaluate Mr. Black's not guilty by reason of insanity claim because the court unfairly placed limitations on the jury instructions related to that issue, and specifically as we briefed it, the issue is whether or not the jury should have been advised per the instructions of the consequences of a not guilty by reason of insanity instruction. So with the court's permission, I would like to focus my argument today principally on that issue, although I will make some brief arguments related to the sentencing as well. The government's response in this case to the insanity defense was to quite effectively accuse Mr. Black of malingering, and they went to great lengths to justify that malingering is not just a matter of pretending that one has a mental illness, but that malingering also has to be linked to some secondary gain, and there were several instances in the record where the government cross examined Mr. Black's primary psychological witnesses on the fact that in previous occasions, the defendant chose to not pursue an insanity defense because of the recognition that the sentencing consequences could be more or less beneficial for him. So to be more specific, Mr. Black had been prosecuted in Connecticut for an offense, and there was a point at which after conferring with his defense counsel, he decided that he was not going to pursue the insanity defense because he only got six months as opposed to potentially five years or more. That was testimony that was taken at a prior hearing, and so on the cross-examination of our witness in this case, our psychological expert, the U.S. attorney specifically elicited that kind of testimony, which clearly had implications for whether or not Mr. Black was malingering or choosing not to go with the insanity defense because he thought it would benefit him in terms of time that he would spend in custody. So that's one example, and that appears in the record at record number 128 and at page IDs number 1911 through 1913. I ask you, there are really two aspects to this insanity defense. One is mental illness, and the other is as a result of the mental illness, he didn't know right from wrong. That's correct. Your argument is focusing on the mental illness part, where it seems to me the manner in which this crime was committed that he knew right from wrong. I don't see that even if a mental illness defense was established that how he could prevail in this case. The manner in which it was committed, his prior record of having been convicted of other crimes, it seems to me to be an overwhelming case for a jury to find, and he bears the burden of proof that he knew right from wrong. I would agree that there was significant evidence of, it was really undisputed that Mr. Black on several different occasions actually possessed the weapons, but the main issue below was what was the reason for it, and really from the very beginning, there was a very grandiose, paranoid view of what was happening in his life and the reasons for the possession of the weapons. He asked his girlfriend to register the guns in her name. Well, that was... Because he had a felony conviction. This clearly indicates that he knew that what he was doing was wrong, whatever mental illness he might have been suffering from. Well, that was evidence that was presented by the government, but we also presented a fair amount of evidence below that Mr. Black, in talking with a number of individuals, was asking for things to happen with regard to registration of weapons and Muslim women, other women from attack, that he was on a government sponsored Michigan from the CIA to this regard. He's making reference to being on assignment from our gates, which could be interpreted as a reference to federal officials. And so all of that was very much woven into the question of his mental state and whether the possession of the weapon was in fact knowing. And so to that extent, we did think that there was enough evidence, and there was evidence from which the Mr. Black was insane at the time that he committed many of these offenses. The other piece of it, and I only intended to touch briefly on this today, but there's also an issue that's briefed in our pleadings as it relates to the court's restriction of the scope of testimony that the jury was allowed to consider. And there was a piece of it that related to his family history of mental illness and specifically related to his mother. And the court placed a fair number of evidentiary restrictions on that body of evidence because it felt like the psychological expert did not have enough of a personal basis, I suppose, for confirming that. Right, because the basis was simply a telephone conversation with the mother that wasn't a basis for having any scientific opinion, was it? Well, the thing about it is that the witness, as a psychological expert, did put forth... I guess he proffered that in a number of respects, psychological experts quite frequently rely on oral reports of family history of mental illness, and so those sort of reports have been received in this case. So the aunt, for instance, Mr. Porter talked about the issues that her sister had and that had been present for many years. And I think the court was really over persuaded by the fact that there was no official diagnosis, although there was a fair amount of evidence presented at sentencing, in particular to the court at the time, that Mr. Black's mother was transient. She was not the kind of person who might easily find their way into organized systems, hospitals, things like that, in order to be diagnosed and to have a full medical file that says, yes, this is your mental disorder. But Dr. Wendt did not... He was not trying to make an official diagnosis of Mr. Black's mother. What he was doing was gathering information as psychologists do from reasonable sources, the family members, and then from a conversation with her himself, he was even able to observe evidence of her mental illness. And so our argument on that point is just that under Rule 702, I believe it is, there is... The threshold for admissibility is not particularly demanding, and it's our contention that the judge unduly restricted that body of evidence. And so I think it relates, Judge Corman, to the overall issue regarding his mental state. And those things in combination, we believe, unfairly impacted the way this proceeding went forward below. And we don't think that Shannon, frankly, was a per se prohibition on the ability of a court to instruct a jury. But doesn't it establish a general rule that you don't go into what the consequences are? And so here, it would not be appropriate to go into what the consequences of a successful defense of not guilty by reason of insanity would be. Well, yes, Judge Moore, I would agree that Shannon said as a general rule, this is not something that should happen in cases. But it did not say that that is a per se matter. And in fact, the court, of course, left open room for that very argument to be made in the appropriate case. And so... But we review for an abuse of discretion, is that right? On the... I do believe... Well, I believe, yes, that abuse of discretion would be the appropriate standard of review. But interestingly enough, Your Honor, the court itself below agreed with our assessment that there were some troubling things in this record that may have warranted an instruction. And it seemed like the court felt like it was almost handcuffed by the Shannon decision, and I don't think that was necessarily true. The... In terms of the effect of the error, aside from the judge's charge, didn't Wesson testify on cross examination that the defendant may have decided not to pursue an insanity defense in a prior case? Because, quote, if he had a successful insanity defense, he could be institutionalized for a much longer period than a maximum sentence. Right. And... But... Okay, yes, I do agree that that is part of that excerpt. But there's also... There was also a very direct line of questioning where the government posed... The government asked, and so by asking and engaging in this conversation is very much raising the inference, the government asked, by not pursuing the insanity defense in that case, it actually turns out to be a benefit because he only got six months as opposed to potentially five years or more. So the inference, the specter of malingering for the purposes of secondary gain in the form of freedom was... It was a part of this record. And as I said, the judge... The judge below was troubled by that. And the jury even picked up on it because after this line of questioning, it sent back... The court below gave the jurors an opportunity to ask questions of the witness, and the court, of course, would screen those before it sent the questions up. Is that a common practice? I was somewhat surprised when I read it. I think it varies. I'm relatively new to the district, so I'm not 100% sure how many judges do that. I have seen it in state courts quite frequently, but in this instance, that was the procedure that was allowed. And so the judge screened the questions with the lawyers and decided not to allow them to be answered. But the questions themselves are... They're illustrative of what the jury was thinking about. They said, is Mr. Black dangerous? Would hospitalization be recommended? And so it sort of was triggered in their mind, I think, by this line of inquiry. And then the court below even... Would it be different if a question like that came out, let's say, during a jury deliberation as opposed to you're sitting there, you're listening to a psychiatrist, and people just ask questions. We don't know why. They could have just been curious. It's all a piece of speculation. Well, to a degree, Your Honor. I would say that in the typical case, we have no indication of how a particular piece of evidence or a particular ruling has an impact on the jury. But by hearing from them in the form of the questions, it does give us some insight. And I would be willing to agree that there is a difference between deliberations and the evidence taking phase of the proceedings, but to the extent that it shows us that we are not... We were not alone in sharing a concern or a reaction to the government's line of questioning, that malingering and secondary gain in the form of freedom. I think the lines... The questions from the jury become relevant to that I think, but for Shannon, been willing to give the instruction, but given that Shannon was what it was, that he felt that we couldn't go forward on this record. But we obviously disagree with that ruling and would ask the court to reverse the conviction on this basis. Just briefly, I see my time is quickly running out. As to the firearms argument, I would just point out that there is a fairly subtle case law that says the agency's regulation... The agency's interpretation of its own regulation is not entitled to deference in those instances where the language being interpreted is unambiguous. And we submit that the Code of Federal Regulations, which defines the word pistol and uses the language of when a pistol is made and so forth, is unambiguous, and therefore the court need not afford deference to how the Alcohol, Tobacco and Firearms Division is interpreting that particular regulation. And just to back up a few steps... Your red light is on, so if you want to use your time, you can, but... No, thank you. I'll just save it for rebuttal. Well, I guess if I could just follow up a little bit. I mean, isn't it the CFR inherently ambiguous, since it refers to originally and then it refers to make, and make also includes altering? So the way it's phrased is originally altered? I mean, that doesn't make any sense at all, does it? Your Honor, if I might just have a moment to pull the language. I think that the way... I think that this statute does not contemplate the sort of modifications that were made here. No, I don't think, to answer your question, that the statute is ambiguous on that point. I mean, the district judge said it was unambiguous, but in favor of the government, right? That was the district court's... You say it's unambiguous in favor of your client. Which... Is that right? That's correct. And if you're... You don't see any ambiguity in originally and then the phrase make, and the make includes altering. I mean, how can it be altered if it's... How can it be original if it's altered? Well, your Honor, with respect, I would indicate that the language is not that it is originally designed, made, and altered. It's originally designed, made, and intended. And so originally designed by, say, whoever the firm is charged with designing the weapon, whoever manufactures it, and then whoever intended it to go into the stream of interstate commerce. But you're arguing that originally designed, made, and intended originally applies to made as well as design? Yes, our position is that originally modifies every word in the... And you say that's unambiguous. I believe it is, your Honor. Why are we bound to follow the CFR? I'm sorry? Why are we bound to follow the CFR? Well, the... In effect, it's almost altering the language of the statute, at least by the dictionary definition of pistol. Which is... I would say that... I mean, here you have the agency that's enforcing the law is bringing this in effect with the concurrence of the Justice Department bringing this prosecution. Well, that is the point. The reg was not adopted with notice to the public and in a kind of a formal way. Who cares? Your Honor, as I said, it's simply our position that basically following the ATF's interpretation of this is allowing them to rewrite the statute in a way that it wasn't intended to be rewritten. I mean, the statutory language, the CFR actually tracks the language of the actual United States code quite closely. The only real distinction is that there's a definition of made that doesn't exist in the primary statute. So we could analyze this under the terms of the statute proper, but it's sort of response to the government's argument that the CFR becomes relevant in that definition of made, which is not made clear in the primary statute that governs. Why can't we just look at a dictionary definition of pistol? And pistol is commonly defined as a weapon that's designed to be fired with one hand. And here there's an alteration. There's the fore grip that's put on the weapon. So now it's designed to be fired with two hands. And why can't we just apply the common sense definition that that makes it not a pistol, but an other weapon? And therefore you have the guideline scoring that the district court applied. Why doesn't that make sense? Well, your honor, I think in order for it to make sense in the way that you're speaking of the alteration, I'm sorry, could you repeat the question? Because I want to make sure that I make my answer responsive. Well, why can't we look to just a common sense dictionary definition of what a pistol is? And which I think most dictionaries would define a pistol as a weapon that is designed and capable of being fired with one hand. This, however, this weapon has a fore grip that has been placed on it. And therefore now it is designed to be fired with two hands. And therefore it is no longer a pistol, but it is an other weapon. And that's what the district court found here for the guideline scoring. And what's wrong with that analysis? I think part of the problem is that we do have a definition for pistol in the statute. CFRs. But if we throw the CFR, I mean, if we don't have to use the CFR, if the CFR isn't consistent with the statute, it shouldn't be used anyway. Why are we bound by the CFR? We're not necessarily, Your Honor. If I may have a moment, I'm just going to reference that portion of the actual United States code that governs this provision. And you're correct. What I will say is this. I don't know if the dictionary definition defines pistol that way, but we do know that many gun owners would fire a pistol with two hands. And I don't know if it's necessarily the case. I don't know what our source of information would be. The fore grip that's been placed on this weapon is to put a second hand on there. That's the only purpose of that, isn't it? It is. So now it's been designed to be fired with use of the That's not the way pistols are designed to be fired. Well, I would say it depends. Again, it sort of comes back to this argument. I think it depends on who designed it. And I mean, if you're not in the language of the CFR, I understand that we can't necessarily rely on that. But if we are, it requires that it be originally designed that way. In addition, just because the fore grip has been installed doesn't mean that it can't actually be fired with just one hand, despite the modification. Why does it matter how it was originally designed? I mean, at the time he was in possession of it, it was clearly an other weapon as defined in the statute. I would disagree, Your Honor, because of the fact that even though this fore grip was added, it still maintained a rifled bore. And in those instances, you are still, it still falls outside the language of the statute because it has that rifled bore. That never changes. And I think that's an important piece of this situation for the court to consider. Thank you. Thank you. Thank you. May it please the court. My name is Stephanie Hayes and I represent the United States. I'd like to start before we left off with the gun. The problem with interpreting whether the pistol, which is at, a picture of it is at 2234 in the record. The problem with interpreting whether or not the Draco is a pistol is that the pistol is not defined in the statute, as Judge Griffin pointed out. And this court recently held in that if it's undefined in the statute, you can construe a word according to its everyday dictionary meaning. And the everyday dictionary meaning of a pistol is a one-handed weapon. Does the Miller case apply when there's a CFR provision that defines the word? I don't believe it addresses it one way or the other. Okay. So then we have the question, what do we do with the CFR definition, which defines the word pistol? That's right, Judge Moore. And I agree with Judge Griffin that it is ambiguous if you believe that originally does modify made as well as originally, I think the first word is manufactured. So when you say it is ambiguous, you're talking about the CFR provision? CFR, yes. Is ambiguous because of the placement of the word originally in front of the word designed, but not in front of made and intended to fire. So I mean, I think, so it's kind of a conditional agreement. If you do think that originally modifies all of the terms there, then yes, it's ambiguous. Particularly ambiguous or confusing because the statute and the CFR itself both do define make to include alterations and subsequent alterations. And so there, I think Judge Corman's point is well made that perhaps we were not bound by the CFR, which is confusing where the statute seems pretty clear about what it thinks about the word made. It's obvious that the Department of Justice doesn't think so. Is it a position that you're advocating the position of the Department of Justice with respect to the regulation, or is it just the U.S. Attorney's Office? No, I'm just, what I am conceding is that if originally is also modifying made, that seems to be ambiguous. If originally is also modifying made, because how can you originally alter? Perhaps you can originally alter at the time that the defendant possesses the gun, a point that you made. But when it's found, when it's recovered, that is in that moment in time it has been altered. But it's not, I'll concede it's not obvious from the CFR if you read it the way that the defendant wants you to read it, whether originally, how originally and made can work together. But then if you look elsewhere in the CFR and the statute, made is defined to include altered. Does the CFR have any kind of, quote, legislative history? Did they explain why they wrote it? Not any legislative history that I found that was useful to determining what that meant, Your Honor. But you still didn't answer my question. Is this the position of the Department of Justice or the U.S. Attorney's Office? I mean, suppose we ruled in your favor, is the Solicitor General going to defend us or is he going to confess error? That the CFR is ambiguous? Yeah. I can't answer that. I don't know. I don't think I am empowered to speak for the Department of Justice about the CFR in the way that you describe. What I can say is that what is clear from the law is that the next step, assuming ambiguity, is that we look at the structure and design of the statute, the National Firearms Act. And there, there are several examples where a firearm is made, altered, into a 5845A weapon. And the best example, I think the one that we all kind of know about, is when a shotgun is made into a sawed-off shotgun, one with a barrel that's been cut to less than 18 inches. Another example where, in addition to a firearm, makes it into a 5845A firearm, is when a semi-automatic rifle, through the addition of a part, can be made fully automatic or a machine gun, which is covered by the NFA. So I think that's another very strong argument about what make is supposed to mean. This Court also looks at and defers to agency interpretation. This is what Mr. Black wants you to sort of ignore. The ATF's interpretation is that if you add an additional foregrip, and it's kind of easy to visualize an additional hand grip or foregrip to a pistol, that that makes it into, in any other weapon, a two-handed weapon. Do we deal here with two agencies of the government, both of which are charged with responsibility for enforcing the statute? One is ATF. I guess it's part of Homeland Security now, or it used to be part of the Treasury Department. I don't know where its current home is. And the Department of Justice, which enforces the statute. Do we have, essentially, a potential conflict between two agencies charged with enforcement? I may not understand. What is the conflict, Judge Corman? Well, the agency, arguably, if the defendant is correct, the agency charged with enforcement has added this word originally made. That original does not appear in the dictionary definition of pistol. Pistol is simply intended to be fired with one hand. You win, clearly, under the dictionary definition. You may or may not win under the CFR. And the defendant is relying on the CFR, and you could win by relying on the statutory definition. So the Department of Justice, or at least the U.S. Attorney's Office in your district, is taking a position that's inconsistent with, arguably, inconsistent with the CFR. I may not have expressed myself well. Let me try to clarify one more time. I don't believe the CFR, and I'm now looking at it, so more helpful maybe, that it states a pistol is defined as a weapon originally designed, made, and intended, et cetera. Our position is that originally doesn't modify made. I was merely conceding that if you interpret originally to modify made, then that would make it ambiguous. And then we have other steps in interpretation that we go to, including looking at the statute first, not the CFR, including looking at the structure and language of the statute, and looking at the agency interpretation. The agency doesn't believe this is ambiguous. They believe that you can make a weapon by adding the foregrip. And the way that we enforce the law isn't inconsistent with that either. At the very end of Mr. Black's argument, he argues that a rifled bore alone would exclude the strako from being covered by Section 5845. And in his reply brief, he cites an ATF handbook. And I just want to, again, start with the statute. There it excludes pistols with a rifled bore. It's not an exclusion for rifled bores. It's coming back to the same question, which is whether that strako is a one-handed or a two-handed weapon. Also, if we then look at the handbook that the defendant cites, it too is consistent with the statute. It says pistols having a rifled bore are excluded. Well, doesn't the statute say shall not include a pistol or a revolver having a rifled bore? So you're reading having a rifled bore, which follows the word revolver, to modify the word pistol as well. What basis do you have for that grammatical interpretation? The context of the statute, the way I read it, Judge Moore, is that it says any pistol or revolver having a rifled bore. Right. But there are grammar rules. And some courts look to the last antecedent rule and things like that. What should we do? Another court that has read having a rifled bore as pertaining to pistol as well as revolver or not? Or are we the first court to have to deal with this? You may be. I don't know the answer, if there are other courts who have interpreted that term. But I do know that if you look elsewhere within even Section 5845, the section takes great pains to distinguish between pistols that have a smooth bore and pistols that have a rifled bore. And so that helps our reading here that this is referring to pistols or revolvers with a rifled bore. So I would refer to the other parts of that same section that distinguishes between smooth and rifled bores. And I also just want to point out that the handbook that Black cites in support actually doesn't support. It actually includes an illustration on the same page that he cites to, that he points this court to, that shows a pistol being modified in the exact same way that his Draco was modified as an example that the ATF gives of how you can turn a pistol into any other weapon. Can I ask you, I may have forgotten, how much difference does this make on the sentence, whether we affirm or reverse on this? Sure. Sure, Your Honor. The difference is one point in the total offense level. He's an armed career criminal. His criminal history stays the same because he's earned a six no matter what. So his range would go from a 262 to 327 month range to 235 to 292 month range. But if we were to find that the district court improperly added the one point here, we would have to remand for resentencing, wouldn't we? Yes. Again, how many months difference does it make? At the low end, that's approximately 30 months, less than 30 months at the bottom of the range. Now he was sentenced to 300 months. So that would mean that the sentence the district court gave him, which was kind of solidly in the middle of his range, would now be slightly above the high end of the new range by eight months. Would you like to address the other issue that your opponent raised about the instruction? Yes. I would just point out factually that the jury question about whether the defendant was a danger or should be committed was discussed at sidebar, outside the presence of the jury with the judge and the defendant, the government, and the district court all agreed that the question should not be posed to the witness. So using that as a basis now for instruction seems kind of like it wasn't a preserved objection. I'd like to address what he characterizes throughout his argument as the exclusion of family history from the jury. And here, the use of speculation by a single family member, the aunt, isn't family history. And using it alone to speculate that the defendant's mother may have had mental illness A, which is bipolar disorder, and then to try to assert genetic causation between bipolar disorder and what he was diagnosing the defendant with, which was delusional disorder, and to then try to offer this as helpful and relevant and reliable expert opinion testimony to the jury, I think that there's absolutely no abuse of discretion in the district court in keeping it out. And even if it were, the claim that he was prejudiced by the exclusion of this full and accurate account of his family's history is, again, I would disagree with the premise. It wasn't full. It wasn't accurate. It was a speculation. And the jury did fully hear the case. Dr. Wendt was one of four experts. Even he testified that there was valid information to support a malingering diagnosis in the defendant. And he also testified at Page IDs 1887 and 1888 that for counts two and three, the defendant never actually gave, never claimed delusions guided his conduct for those gun possessions. In fact, that was reality-based explanations for his behavior. So his defense was in. The problem was what Judge Corman pointed out, which was step two of his defense, which was that there was so much evidence that he knew right from wrong in the manner of the crimes. And even with step one of the defense, the mental illness, there was strong evidence that he was faking and exaggerating, particularly from his employer who testified that he said he was going to a clinic to get checks. If there are no more questions, thank you. Thank you. Your Honors, I don't have much to add to the discussion. The only thing that I would point out is that the modification made to the firearm in this case is not akin to the sorts of modifications that are made to the weapons that Sister Counsel referenced that make those weapons inherently more dangerous. Sawing off the shotgun makes that weapon inherently more dangerous. The installation of a foregrip, if anything, arguably would allow a person to control it. Is that the standard, whether it makes it more dangerous or whether it makes it a design to be fired with two hands rather than one? I don't know that it's necessarily the standard, but I say, I offer it just as a to make that distinction. Why? Because the statute itself... We're not scoring the guidelines based upon the dangerousness of the weapon, are we? We're determining whether it's a pistol or any other weapon. Isn't that what we're deciding here? We are deciding that here, but I guess the point is that the statute that encompasses the definition of any other weapon, it's meant to modificate the sorts of weapons that I mentioned, things that are... I mean, don't we have to apply the language of the statute, though? Or the guideline, I guess? We do, Your Honor, but this court has issued opinions that talk about, I guess, the background, the legislative history, the reasons for the statute being enacted in the first place. If there are no other questions, I would... Thank you. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?